UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERFY SUB, INC.,

       Plaintiff,

v.

NORTHLAND INSURANCE COMPANY,

       Defendant.

_____/

Case No. 2:08-cv-11644

HONORABLE STEPHEN J. MURPHY, III

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D/E 25)

This is a suit to obtain insurance benefits following a fire at a sub shop. Herfy Sub, Inc. ("Herfy"), the owner of the shop, has sued Northfield Insurance Company ("Northfield") (erroneously sued as Northland Insurance Company), for breach of contract, specific performance, and violations of the Uniform Trade Practices Act. Northfield counterclaims for rescission and declaratory judgment of no coverage. This matter comes before the court on Northfield's motion for summary judgment on plaintiff's claims and on Northfield's counterclaims. For the reasons stated below, Northfield's motion for summary judgment will be granted.

### FACTS

Herfy is a corporation that is wholly owned and controlled by Ghassan Mikha.

Mikha has owned a Tubby's Sub franchise, Store #124, under the company name AGK since at least 2002. The Store #124 was damaged by a fire in 2002, and AGK received money under a fire insurance policy at that time. In August or September of 2004, Mikha formed Herfy Sub, Inc. in order to set up a second Tubby's franchise, Store #176. Mikha is the sole shareholder of both AGK and Herfy Sub, Inc.

On September 23, 2004, Herfy purchased an insurance policy with Nationwide Insurance through Allied Insurance for Store #176.  The policy was scheduled to expire on September 23, 2005, but was cancelled for non-payment on March 16, 2005.[1]

On June 24, 2005, Herfy filed an application of insurance with Northfield for Store #176 through the Danno Insurance Agency.  Frank Danno was the insurance agent assisting Mikha in this task.  The Northfield application form asks two questions that are at issue in this case.  The application asks if "any policy or coverage [has been] declined, cancelled, or non-renewed during the prior 3 years?" -- to which the plaintiff answered "no." The second question at issue asks for a "Loss History," -- and the plaintiff's answer was "no losses."  Danno reviewed all of the information contained in the application with Mikha, including the aforementioned questions and answers.

Four days after filing the application, in the early morning hours of Tuesday, June 28, 2005, and before the store was open for the day's business, a fire consumed much of the interior of Store #176.  The suspected cause of the fire was arson.  Store #176 did not operate on June 28, 2009 or thereafter.

Herfy submitted a notice of loss on June 29, 2005 and subsequently filed a sworn proof of loss on September 28, 2005.  In its sworn proof of loss, Herfy sought reimbursement under the policy's business interruption coverage and, in support of the claim, submitted handwritten monthly sales reports for Store #176 for several months leading up to the fire, including the month of June.  The monthly sales report for June includes claimed sales of $406.76 for June 28, 2005, which is the day of the fire and on

---

[1]Herfy's briefs argue that Mikha never received the cancellation notice, but there is no affirmative evidence in the record of this other than the fact that Store #176 remained uninsured from March 16, 2004 until June 24, 2004.  Herfy argues that this is evidence that Herfy was unaware it was uninsured.

which Herfy now concedes no business was done at Store #176 because it never even opened for business that day.  Herfy has also submitted a claim for loss due to theft, which allegedly occurred a matter of days after the fire.

Mikha provided an examination under oath (EUO) for Northfield pursuant to the policy provisions.  At that examination, Mikha made several statements that Northfield argues are contradicted by other evidence.  Mikha stated in his EUO that Monday June 27, 2005 was his last business day before the fire, but, as noted above, he submitted handwritten sales sheets (supposedly prepared contemporaneously) to support his business interruption claim stating a sales number for Tuesday, June 28, 2005.  Mikha claims that this was a simple error due to his running two separate Tubby's locations.  Herfy withdrew its business interruption claim once confronted with the discrepancy.  Mikha also stated in his EUO that he had gone straight home after work on the day before the fire, but he had allegedly previously told the Northfield claim investigator that he had gone to his mother's house that night.  Mikha also said that he opened the Herfy location because overall business was good at the time, but business records show that sales were actually down at the AGK location between 2002 and 2004.  Finally, Mikha stated in his EUO that he was up to date on his bills, his mortgage, and that the Tubby's franchise fee for Store #176 was deferred for the first six months, whereas the evidence in the record shows that he was in arrears on his franchise fees for both locations and was six months behind on his home mortgage at the time of the fire.

On March 29, 2007, Northfield sent a letter denying Herfy's claim and rescinding the insurance policy.  The March 29, 2007 letter states that it encloses a refund check for all premiums paid in the amount of $1,084.90.

3

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

## ANALYSIS

4

I.   MATERIAL MISREPRESENTATIONS IN THE APPLICATION FOR INSURANCE
ARE SUFFICIENT TO VOID THE INSURANCE CONTRACT AB INITIO

"[W]here an insured makes a material misrepresentation in the application for insurance...the insurer is entitled to rescind the policy and declare it void ab initio." *Lake States Ins. Co. v. Wilson*, 231 Mich. App. 327, 331 (1998) (citing *Lash v. Allstate Ins. Co.*, 210 Mich. App. 98, 101 (1995)).  The misrepresentation need not be intentional as long as it is relied upon by the insurer, and reliance exists when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage.  *Id.*

Northfield argues that there were two material misrepresentations made on Herfy's application for insurance.  First, the application signed by Mikha stated that he had not had an insurance policy that had been "declined, cancelled, or non-renewed" in the past three years, which Northfield asserts was a misrepresentation because in fact there had been a previous policy covering Store #176 that had been cancelled for non-payment several months prior.  Northfield also claims that Mikha misrepresented the risk his business posed by claiming that he had sustained "no losses," while in fact Store #124 had been damaged by a fire in 2002.  Northfield claims that these facts are sufficient for this court to find grounds for rescission as a matter of law.

The Plaintiff argues in its answer that there are material issues of fact regarding whether the statements in the application were misrepresentations on which the Defendant relied, and whether those misrepresentations were material.  As to whether an insurance policy was "declined, cancelled, or non-renewed" in the past three years, Herfy argues that it was not aware of the cancelation of the original policy, but rather looking to replace an existing policy.  As to the alleged misrepresentation regarding previous losses, Herfy argues that the 2002 fire was to another sub shop owned by another entity, AGK, not by

Mikha personally or Herfy Sub. Inc.  Herfy also argues that Mikha has limited familiarity with English and relied upon the insurance agent in preparing the application.

The Court holds that Herfy made material misrepresentations in the application for insurance that, as a matter of law, justify rescission by Northfield.  First, it is no defense that the misrepresentations were innocent, or that Mikha's limited command of the English language made him unaware that the representations were being made.  *See Lake State Ins. Co.*, 231 Mich. App. at 331 ("[r]ecission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer");  *Shaw v. Royal Maccabees Life Ins. Co.*, No. 207765, 2000 WL 33539448 at * 4 (Mich. Ct. App. January 4, 2000) (the fact that policy applicant had literacy problem does not relieve her of duty to know representations contained within which are inducement for issuance of policy) (citing *Kane v. Detroit Life Ins. Co.*, 204 Mich. 357, 364 (1918)).

As to the issue of materiality, the Court finds that the misrepresentation regarding previous policy cancellations was material as a matter of law.  A misrepresentation is material if it affects either the acceptance of the risk or the hazard assumed by the insurer. *In re Certified Question*, 413 Mich. 57, 62 (1982).  The acceptance of the risk involves the evaluation made by the insurer before the policy is issued.  *Id.* at 63.  In support of its motion, Northfield has submitted an affidavit by Steve Perovich, a managing director in the underwriting department of Northfield Insurance Company.  In his affidavit, Perovich states that had Northfield known the true facts regarding Herfy's prior policy cancellation history, Northfield would have asked further questions, may not have issued the policy, or at least would have issued it under different terms and conditions including an increase in premium. Perovich aff. ¶8.   This testimony is unrebutted by Herfy and establishes that the misrepresentation was material.

6

Herfy argues that regardless of the misrepresentations, the policy has been ratified, and therefore cannot be voided. Herfy argues specifically that Northfield has ratified the existence of the policy by allegedly retaining the premium and by compelling Herfy to provide information, submit to an examination under oath and submit claim information. Herfy is incorrect both as a factual matter and as a matter of law. Northfield has submitted its claim denial letter of March 29, 2007 as evidence that Northfield did in fact return the premium to Herfy. See March 29, 2007, Claims Rejection Letter (Summary Judgment Motion, Exhibit 16). While Herfy argues in response that Northfield did not return the premium, it submits no testimony or other admissible evidence to substantiate this claim, and therefore fails to carry its burden of showing an issue of fact. See Fed. R. Civ. P. 56 (e)(2) (party opposing summary judgment may not rely on allegations but must submit evidence showing genuine issue for trial). Even if Herfy had submitted testimony supporting its argument, it would not show ratification or waiver, because under Michigan law, retention of an insurance premium is not sufficient to infer waiver. *NCMIC Ins. Co. v. Dailey*, 2006 WL 2035597 (Mich. App. July 20, 2006). The Court is also not persuaded by Herfy's claim that Northfield ratified the policy by requiring Herfy to submit to an examination under oath and provide claim information. Waiver is an intentional relinquisment of a known right. *Id.* at *4. This may be shown by express declarations or by conduct manifesting such intent. *Id.* The undisputed evidence shows that Northfield investigated its claim and required Herfy to respond under an reservation of rights. See October 27, 2005 Reservation of Rights letter, Defendants' Exhibit 17. Herfy's ratification argument is therefore without merit.

The Court holds that Northfield has met its burden of showing a misrepresentation of material fact that justifies rescission by the insurer by failing to disclose that the prior

insurance policy had been cancelled for nonpayment.  Northfield has provided evidence that the prior policy had been cancelled due to non-payment, that the plaintiff misrepresented this fact in applying for coverage under the Northfield insurance policy, that the misrepresentation was material, and that  Northfield relied upon the misrepresentation in issuing the policy.  Summary judgment is therefore appropriate on this issue.

II.   DEFENDANT'S AFFIRMATIVE DEFENSE OF FRAUD
      AND FALSE SWEARING IN THE SUBMISSION OF THE POLICY

Northfield also argues that the policy has been voided by alleged fraud and false swearing in the submission of the claim by Herfy.  Because the Court finds in section I above that the policy was properly rescinded and void *ab initio* due to misrepresentations in the application for the policy, this second issue is moot and therefore will not be addressed by the Court.

III.   IS LOSS DUE TO THEFT COVERED BY THE POLICY IN QUESTION?

Plaintiff has sued for losses due to theft, but Northfield states that the policy in question does not cover such losses. This issue is also moot due to the Court's conclusion in section I above and therefore will not be addressed by the Court.

IV.   UNIFORM TRADE PRACTICES ACT

Count II of plaintiff's complaint asserts a claim under the Uniform Trade Practices Act ("UTPA").  The UTPA does not create a private right of action.  *Makki ex re. Baghdadi v. Farmers New World Life Ins. Co.*, 49 Fed. Appx. 36, 41 (6th Cir. 2002);  *Isagholian v. Transamerica Ins. Corp.*, 208 Mich. App. 9, 17 (1994).  Summary judgment is therefore appropriate on this count also.

## CONCLUSION

For the reasons stated above, Northfield's Motion for Summary Judgment (docket number 25) is **GRANTED**.

**SO ORDERED.**


                                        s/Stephen J. Murphy, III
                                        STEPHEN J. MURPHY, III
                                        United States District Judge

Dated:  October 23, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 23, 2009, by electronic and/or ordinary mail.

                                        s/Alissa Greer
                                        Case Manager